## First National Bank & Trust Co. of Covington et al. v. Perry et al.
## Hind v. Same.
## Moorman, Special Banking Commissioner, et al. v. Same.

(Decided Oct. 20, 1933.)

ROUSE & PRICE for appellants First National Bank & Trust Co. and Ben A. Adams, as conservator of said bank.

GALVIN & TRACY for appellant C. W. Moorman, special deputy banking commissioner.

CHARLTON B. THOMPSON for appellant W. N. Hind.

STEPHEN L. BLAKELY, J. RICHARD UDRY and BLAKELY & MURPHY for appellees Ralph Perry, Edward J. Wolfzorn, and Frank Winterman, for the benefit of the Latonia Deposit Bank & Trust Co.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Reversing.

In the latter part of the year 1931 and early in January, 1932, the Latonia Deposit Bank & Trust Com-

pany borrowed money from the First National Bank & Trust Company of Covington, executing notes therefor which footed up $70,000; the notes being secured by collateral of the par value of $158,450. On January 14, 1932, the Latonia Deposit Bank voluntarily closed its doors, placing its affairs in the hands of the banking commissioner of Kentucky. The banking commissioner on February 15, 1932, appointed W. N. Hind as special deputy banking commissioner to liquidate the affairs of the bank. Every sixty days thereafter Hind filed in the circuit court his reports of the resources, liabilities, and expenses of the liquidation of the bank. He continued in charge of the bank and its assets. In July, 1932, an effort was made to reorganize the Deposit Bank, and some of the directors of the bank applied to Hind to pay off the notes to the First National Bank and stop interest. Hind declined to do this on the ground that he did not have enough money on hand to pay the note in full. The effort to reorganize the bank was abandoned. The First National Bank, after demanding the payment of its notes and getting no response, began selling the securities, as it was authorized to do by the contract. In this way it realized $41,045.85, leaving a balance on the note of $28,954.15, and interest. In this condition of things Hind, as deputy commissioner, took the advice of the banking commissioner, also of the Attorney General of the state and the attorney for the Deposit Bank, and they advising him that he had the power to take up the note by paying the balance and thus save interest and any loss on the securities, Hind on August 18, 1932, paid the balance due the First National Bank and took up from it the securities then held by it, which were of the par value of $88,875.84. The interest on the note then amounted to $1,805.75, but the First National Bank reduced this to $1,545.85, which, with the balance of $28,954.15, made the total payment of $30,500. Hind afterwards collected from some of the securities returned to him $9,049.16. Hind's reports to the court were not placed on the motion docket until January, 1933. Upon the call of the reports for confirmation, Ralph Perry, E. J. Wolfzorn, and Frank Winterman, as depositors and creditors of the deposit bank, on behalf of themselves and all other depositors, filed exceptions among other things alleging the above facts as to the payment by Hind of the $30,500. On February 14, the exceptions

to the report of Hind was set for oral hearing on February 20, 1933. On March 13, 1933, Hind filed his answer and response to the exceptions. On March 20, 1933, Perry, Wolfzorn, and Winterman filed in the clerk's office a petition in which they prayed judgment directing the First National Bank to pay to the proper authorities the $30,500, and that Hind, as deputy banking commissioner, return to the First National Bank the securities above referred to. A summons was issued that day on the petition, which was served on the 22d of March on the vice president of the bank. A summons was also issued against Hind, which was served on him on March 28. On March 23 the exceptions came on for hearing and proof was heard in part, and the cause was continued to March 28. On May 9, Charles W. Moorman, who had been appointed as special deputy banking commissioner to take the place of W. N. Hind, filed in the clerk's office his certificate of appointment. On the same day the court entered judgment against Hind personally in favor of the petitioners for the amount he had paid the First National Bank. Execution was issued on this judgment on June 2. On June 7, Moorman was substituted as banking commissioner in place of Hind, and he filed his petition asking that the judgment be set aside. This was overruled. On June 19, the First National Bank filed in open court a copy of the order of appointment of Ben Adams, conservator of the First National Bank, which was dated March 20, 1933, and put all the affairs of the bank in the hands of the conservator. His motion to set aside the judgment was also overruled. Hind entered a motion that the personal judgment against him be set aside, and this was overruled. On June 27, the bill of evidence was filed and the court modified on July 11 its order of May 15, providing that Moorman might return to the First National Bank the securities Hind had taken back upon the bank paying him the balance of the debt $21,450.84 ($30,500—9,049.16). From these orders the appeals before us are prosecuted.

The first question presented is, Was the payment by Hind to the First National Bank of the $30,500 unauthorized? It is provided by section 165a-17, Kentucky Statutes, defining the powers of the Banking Commissioner, as follows:

"The assets of any bank in liquidation under this

act shall be applied (a) to the payment of costs and charges of liquidation, and preferred claims; (b) to satisfaction of secured claims to the extent of such security."

In Thompson v. Denny, 237 Ky. 239, 35 S. W. (2d) 283, 284, Ed Gardner, the special banking commissioner, was the president of the First National Bank of Mayfield. He paid off a note held by his bank and took up the securities which had been deposited as collateral. It was sought to hold him responsible for what he had done, and in that case the court thus stated the rule:

"Such transactions must always be carefully scanned by courts. Gardner was interested in the First National Bank of Mayfield, and therefore, in case the transaction should be questioned, the burden was on him to show that it was free from any effort or intention on the part of Gardner, as special banking commissioner, to favor the First National Bank of Mayfield over other creditors similarly situated."

Hind was one of the directors of the National Bank and also a stockholder. The same rule must be applied here as was applied there; but if he has shown that the transaction was free from any effort on his part to favor the National Bank, he cannot be held liable. In the recent case of Collopy v. Dorman, 250 Ky. 513, — S. W. (2d) — , decided October, 1933, the court thus defined the rule as to the powers of the commissioner:

"The primary purpose of the laws authorizing and controlling the liquidation of insolvent banking institutions is to protect the depositors and to secure settlement of their claims as promptly as is consistent with the reasonable conservation and economic administration of the assets. To that end, the banking and securities commissioner is vested with broad discretionary powers, although his acts are subject to judicial review. He is a trustee of an express trust to accomplish the objects of the statute. Although there appears no specific authority in respect to such disposition of the assets as they are here presented, regard must be had for the elemental rule that the powers of a trustee are commensurate with the duties of the trust and that whatever authority is necessary to possess in order

to effectuate its objects it is given him by implication. The commissioner's acts must, therefore, be judged by the rule of reason, prudence, and good faith, with a liberal rather than a strict interpretation of his statutory authority.''

In this case the proof is undisputed that after Hind had collected $9,049 from the securities he took back from the National Bank, he had in his hands bonds of the value of $13,490, and two notes well secured by mortgage on real estate of double their value, amounting to $17,000, and one note on a solvent man who had already paid half the note for $1,275, making in all $31,-765 to secure the balance of the amount he had paid the First National Bank. There was no contrary evidence. While the witnesses do not say that the above figures were the market value of the bonds, it is very apparent from their testimony as a whole that this was what they meant. For they say that certain bonds had no market value. They were financial experts introduced from other banks, and very plainly their testimony as a whole shows that they were giving the fair market value of the securities. It thus appears that the securities were of a fair market value, at least one-third more than the balance of the debt. In addition to this it is undisputed that the directors of the Deposit Bank in July urged Hind to pay this money to the National Bank, take up the notes, and save the securities. They wanted to cut off interest and reorganize the Deposit Bank. There is no showing that conditions had changed, practically, when Hind made the payment in August or about a month later. He did in August only what the directors wanted him to do in July. He did not do it in July because he did not have the money. If it was to the interest of the bank to make this payment in July, it was equally to its interest to do so in August. In addition to this, before Hind would take this step or rely on his own judgment as to the value of the securities, he had them appraised by men skilled in their business, and their appraisement, as above shown, showed that it was to the interest of the bank to take up these securities and stop interest on this note. In about six months Hind had collected from the securities nearly one-third of the debt, and there was no showing that the balance of the debt could not be collected from the remaining securities. The facts shown by the rec-

ord clearly sustain the burden of proof which the law placed upon Hind under the circumstances, and on the facts judgment should have been entered in his favor and also in favor of the National Bank. This conclusion makes it unnecessary to consider the other matters relied on as to the regularity of the proceedings.

As Hind had authority to pay the money to the National Bank, it had the right to accept it. The National Bank was not before the court. The process was served on the vice president after the bank had passed into the hands of the conservator.

Judgment reversed, with costs, and cause remanded, with directions to set aside the judgment against Hind and the National Bank, and dismiss the petition of appellees seeking relief.